**FILED**

DEC 23 2005

HAROLD S. MARENUS, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | ) BAP No. NC-05-1205-MaSZ |
| | ) |
| MIZRAIM MOHAMMED EL and | ) Bk. No. 04-45048 |
| PATRESE M. EL, | ) |
| | ) |
| Debtors. | ) |
| _____ | ) |
| | ) |
| MIZRAIM MOHAMMED EL and | ) |
| PATRESE M. EL, | ) |
| | ) |
| Appellants, | ) |
| | ) |
| v. | ) **M E M O R A N D U M**[1] |
| | ) |
| MARTHA BRONITSKY, Chapter 13 | ) |
| Trustee; RUDY SPATENKA; SELECT | ) |
| PORTFOLIO SERVICING, INC., | ) |
| | ) |
| Appellees. | ) |
| _____ | ) |

Argued and Submitted on November 16, 2005
at San Francisco, California

Filed - December 23, 2005

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Edward D. Jellen, Bankruptcy Judge, Presiding.

---

Before: MARLAR, SMITH AND ZURZOLO,[2] Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication and may not be cited by the courts of this circuit except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel. See 9th Cir. BAP Rule 8013-1.

[2] Hon. Vincent P. Zurzolo, United States Bankruptcy Judge for the Central District of California, sitting by designation.

-1-

## INTRODUCTION

In bankruptcy court, the pro se chapter 13[3] debtors asserted that their debts had been discharged prior to full payment in accordance with their confirmed plan, and they sought an order to that effect. The court denied their motion for an early discharge as legally insufficient.

After the debtors filed this appeal of the court's order, their chapter 13 case was dismissed. Both orders have been timely appealed. We conclude that there was no legal error in the bankruptcy court's rulings and AFFIRM.

## FACTS

Mizraim Mohammed El and Patrese M. El ("Debtors") filed a chapter 13 petition on September 15, 2004. At that time, they owned real property in Richmond, California, including residential real property, located at 2808 Cutting Blvd.[4]

Select Portfolio Servicing, Inc. ("Select Portfolio") was a secured creditor with a loan claim in the amount of $195,826.77, which was secured by a lien on Debtors' residential real property.

---

[3] Unless otherwise indicated, all chapter and section references are to the pre-amended Bankruptcy Code ("Bankruptcy Code" or "Code"), 11 U.S.C. §§ 101-1330, and rule references are to the Federal Rules of Bankruptcy Procedure ("Fed. R. Bankr. P."), Rules 1001-9036.

[4] We take judicial notice of pertinent items in the bankruptcy court records, such as the chapter 13 petition and schedules, the plan, the claims register, and pleadings referenced by the appellants. O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957 (9th Cir. 1989) (panel may take judicial notice of bankruptcy court records).

-2-

1    Rudy Spatenka ("Spatenka") was a secured creditor holding a

2  promissory note from Debtors in the amount of $148,500, which was

3  secured by a first deed of trust ("DOT") and assignment of rents

4  in other real property, located at 2901 Cutting Blvd.[5]

5    At the time of the chapter 13 filing, Debtors were

6  approximately $4,000 in default under Spatenka's Note and DOT and

7  $20,000 in arrears to Select Portfolio.

8    Spatenka originally objected to Debtors' proposed chapter 13

9  plan on feasibility grounds.  Thereafter, through their attorney,

10  Timothy J. Walsh ("Walsh"), Debtors entered into a stipulation

11  with Spatenka to make certain amendments to the plan.

12    Debtors' first amended plan proposed to make plan payments of

13  $740 per month for 60 months, including the curing of arrearages.

14  It further provided for direct monthly payments to Spatenka and

15  Select Portfolio in the amounts of $1,608.75 and $1,700,

16  respectively.  Finally, the plan provided for a balloon payment to

17  Spatenka of the entire debt balance before the 60th month of the

18  plan.

19    The plan was confirmed on March 2, 2005.  The confirmation

20  order made the following provisions for Spatenka's debt:

21         2.   The trustee shall make disbursements on the
       secured claim of [Spatenka] per the claim filed, with
22       interest at the rate of 10%;

23         3.   The debtor shall pay directly [Spatenka] [sic],
       the sum of $1,608.75 per month;
24
           4.   The debtor will further propose pursuant to 11 USC
25       1322(b): [Spatenka] to be paid in full within 60 months or
       prior to the end of 60 months, in the amount of the entire
26       indebtedness of approximately $148,500.00;

27  _____

28       [5] Spatenka filed secured claims for $5,457.34 and $153,957.
     The record does not show that these claims were the subject of an
     objection.  See Fed. R. Bankr. P. 3007.

-3-

5.    Debtor shall maintain homeowner's insurance on the real property at 2901 Cutting Bl, Richmond, Ca, and provide proof to creditor [Spatenka];

6.    Debtor shall maintain all post petition property tax on said real property, as they [sic] become due, and provide proof to creditor [Spatenka];

7.    In the event the debtors do not make the regular monthly payments to [Spatenka], by the 10th of each month, or default as to the providing of home owner's [sic] insurance, or timely payment of property tax on said real estate, creditor [Spatenka] may serve a letter upon debtors and debtors' counsel by first class postage, with a notice of 10 days to cure said default; if said default is not cured within the 10 days, the automatic stay will lift without further notice or hearing; debtors will have the right to cure on only 3 separate occasions; upon the fourth occasion of default, as described above, the automatic stay will lift without further notice to debtors or debtors' counsel.

Order Approving Chapter 13 Plan (March 2, 2005), pp. 1-2.

Almost immediately, Debtors defaulted and, on or about March 11, 2005, Spatenka served a first letter notice of default on Debtors regarding the regular March payment. On or about March 17, 2005, Spatenka served a second letter notice indicating that, although he had received $1,607 from Debtors, that amount was insufficient, as the regular payment was $1,608.75 plus a late penalty of $160.88. In addition, Spatenka demanded that Debtors submit evidence of homeowners' insurance.

Debtors responded, without benefit of counsel, on March 17, 2005, by serving upon the chapter 13 trustee ("Trustee"), Spatenka and Select Portfolio, and filing with the court, a pleading entitled "ACTION (UCC1-201(1) [sic] BY NOTICE OF TENDER AND TENDER IN TRANSFER, SATISFYING i.e. DISCHARGING ALL ALLEGED DEBT-- TOGETHER WITH NOTICE OF MOTION AND AND [SIC] MOTION TO DISCHARGE ALLEGED DEBTORS BEFORE COMPLETION OF CHAPTER 13 PLAN PURSUANT TO TITLE 11 U.S.C. SECT. 1328(b)" ("Motion for Discharge of Debts").

-4-

1  Debtors did not, however, ask the court to allow a post-

2  confirmation modification to the plan pursuant to § 1329.

3      Basically, Debtors asserted that they could extinguish and

4  discharge the debts owed to Spatenka and Select Portfolio, as well

5  as the plan payments to Trustee.  They proposed to do this via

6  self-styled promissory notes and documents given to each one,

7  which were based upon Debtors' unilateral view of the law and how

8  it should work, a view that was completely contrary to their

9  confirmed plan.

10      The documents being substituted for actual cash payments were

11  unorthodox.  Accompanying the promissory note was a "self-

12  executing" security agreement,[6] which labeled Trustee as "User"

13  and the so-called secured party as Debtors, themselves, under an

14  alleged trade-name/trademark, MIZRAIM MOHAMMED EL©, PATRESE

15  MOHAMMED EL©, PATRESE MICHELLE ALSTON©.[7]  The documents included

16  some type of duty by which Trustee could "opt-out" only by ceasing

17  to "use" the estate's property.  The security agreement purported

18  to prevent Trustee from any unauthorized "use" of the "trade-name"

19  or the collateral, under pain of monetary sanctions.

20      A financing statement was attached which designated, as both

21  the Debtor and the secured party, Mizraim Mohammed El, and

22  described as "collateral" all of his real and personal property.

23      All in all, these documents were virtually incomprehensible,

24  unsupported by applicable bankruptcy law, and legally ineffective.

25  None of the affected parties had agreed to this new treatment of

26  their obligations.

27  ──────────────

28      [6]  Only the documents provided to Trustee have been included
    in the excerpts of record.

        [7]  The significance of the copyright symbols is unexplained.

-5-

After receiving these documents, on March 22, 2004, Spatenka filed a "Declaration Re Breach of Chapter 13 Plan and Adequate Protection Order." He requested immediate relief from the automatic stay due to Debtors' failure to pay the March payment in full and to provide proof of homeowners' insurance and payment of real estate taxes.

Spatenka also filed a response to the Motion for Discharge of Debts, which he stated lacked factual or legal basis, describing it as "nonsensical and near impossible to decipher." He challenged Debtors' attempt to unilaterally replace his secured lien with other incomprehensible and legally invalid documents.

On April 6, 2005, Walsh filed a motion to withdraw as Debtors' counsel. Matters then worsened for Debtors when, on April 7th, Trustee filed a "Notice of Default in Chapter 13 Plan Payments and Demand for Cure." The notice informed Debtors that they were delinquent in their chapter 13 plan payments, and that if they did not pay $1,480 within 20 days, their case could be immediately dismissed without further notice or hearing.

On April 14, 2005, Debtors followed up on their Motion for Discharge of Debts with the service and filing of a "Notice of Alleged Creditors [sic] Acceptance of Alleged Debtors [sic] Tender of Credits and Offer of Performance Made and Offered on March 17, 2005." They asserted that Trustee's and Select Portfolio's silence was an "acceptance" of their position, and, additionally, that Spatenka, by not verifying the debt, also "accepted" the new treatment.

-6-

These unusual events culminated in a hearing on May 5, 2005.[8] First, the bankruptcy court granted Walsh's motion to withdraw. Next, addressing Debtors' Motion for Discharge of Debts, the bankruptcy court reasoned, among other things, that the Uniform Commercial Code ("UCC") sections which Debtors had proffered were not applicable to secured interests in real property. It therefore denied the Motion.

The bankruptcy court noted that Debtors were still in default under their plan as to Spatenka's debt. It also confirmed, with Trustee, that Debtors were still in default in their plan payments, in the sum of $1,480. The court therefore granted Spatenka's motion and, independently, dismissed the chapter 13 case for the plan payment default. It ordered the automatic stay to be lifted after May 25, 2005.[9]

Separate orders were then entered, as follows:

- Order Denying Motion for Discharge of Debts - May 6, 2005
- Order Re Breach of Chapter 13 Plan - May 10, 2005
- Order Granting Motion to Withdraw - May 10, 2005
- Order Dismissing Case - June 6, 2005

Debtors timely appealed the Order Denying Motion for Discharge of Debts and the Order Dismissing Case, and we review

---

[8] The transcript of this hearing was ordered and filed with the bankruptcy court and with the BAP. Although it was not included in the excerpts of record, we presume that Debtors intended it to be, as it is necessary for us to review their argument. See Ehrenberg v. Cal. State Univ. (In re Beachport Entm't), 396 F.3d 1083, 1087 (9th Cir. 2005) (panel abuses its discretion if it fails to consider the impact of a sanction for procedural violations). Therefore, we will consider it.

[9] Mr. El, appearing pro se at oral argument, stated that foreclosure had not yet occurred.

-7-

both orders.[10]

## ISSUES

1. Whether the bankruptcy court erred in denying the Motion for Discharge of Debts.

2. Whether the bankruptcy court abused its discretion in dismissing the chapter 13 case.

3. Whether the bankruptcy court's orders were void because they violated Debtors' due process rights, or were products of fraud or judicial bias.

## STANDARD OF REVIEW

The bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law, including its interpretation of the Bankruptcy Code, are reviewed <u>de novo</u>. <u>Latman v. Burdette</u>, 366 F.3d 774, 781 (9th Cir. 2004).

"A reorganization plan resembles a consent decree and therefore, should be construed basically as a contract." <u>Hillis Motors, Inc. v. Haw. Auto. Dealers' Ass'n</u>, 997 F.2d 581, 588 (9th

_____

[10] Debtors' notice of appeal expressed their intent to appeal both orders, although it was premature as to the dismissal order, and we have jurisdiction over both orders. <u>See</u> <u>Munoz v. S.B.A.</u>, 644 F.2d 1361, 1364 (9th Cir. 1981) (intent to appeal from a specific judgment may be fairly inferred from the notice); Fed. R. Bankr. P. 8002(a) (premature notice of appeal is considered filed upon entry of final judgment).

-8-

Cir. 1993). In the absence of factual issues, questions of contract enforcement and interpretation are subject to de novo review. See Dolven v. Bartleson (In re Bartleson), 253 B.R. 75, 79 (9th Cir. BAP 2000).

A bankruptcy court's decision to dismiss a chapter 13 case "for cause" pursuant to § 1307(c) is reviewed for an abuse of discretion. Leavitt v. Soto (In re Leavitt), 171 F.3d 1219, 1223 (9th Cir. 1999). A court necessarily abuses its discretion when it makes an error of law. Debbie Reynolds Hotel & Casino, Inc. v. Calstar Corp. (In re Debbie Reynolds Hotel & Casino, Inc.), 255 F.3d 1061, 1065 (9th Cir. 2001).

The question of whether the requirements of due process have been satisfied is one of law which we review de novo. Willamette Waterfront, Ltd., v. Victoria Station Inc. (In re Victoria Station, Inc.), 875 F.2d 1380, 1382 (9th Cir. 1989).

## DISCUSSION

### A. Debtors' Tender was Legally Insufficient and an Improper Attempt to Modify the Chapter 13 Plan

Debtors proposed to pay off their chapter 13 plan obligations by giving Trustee a "promissory note" in the amount of $54,000 as well as other self-styled documents. This option was not what their plan called for, and they had no unilateral right to change its terms or to impose unauthorized conditions on other parties.

Debtors' obligation under the plan, which they voluntarily proposed and for which they had obtained confirmation, was to pay money in monthly installments. A debtor and all creditors are

-9-

bound by the provisions of a chapter 13 plan. <u>See</u> § 1327(a). The creditors "have a justifiable expectation that they will be treated in accordance with" the plan's terms. <u>In re Richardson</u>, 192 B.R. 224, 228 (Bankr. S.D. Cal. 1996). Thus, the plan acts as a contract between the debtor and the debtor's creditors and governs their contract rights until the plan is properly modified. <u>See</u> <u>Hillis Motors</u>, 997 F.2d at 588 (discussing nature of chapter 11 plan); <u>In re O'Brien</u>, 181 B.R. 71, 78 (Bankr. D. Ariz. 1995).

Debtors did not file a motion to modify their plan, post-confirmation. Instead, Debtors argued that they acted pursuant to the UCC and California law.

First, the bankruptcy court correctly ruled that the UCC was inapplicable to this situation. The only creditors listed in Debtors' plan were secured creditors with liens on Debtors' real property and the tax collector. The UCC is designed to promote a fair and efficient framework for commercial transactions involving personalty and fixtures. <u>See</u> UCC § 1-102, Cal. Com. Code § 1102; <u>Ford & Vlahos v. ITT Commer. Fin. Corp.</u>, 8 Cal. 4th 1220, 1234, 885 P.2d 877, 886, 36 Cal. Rptr. 2d 464, 473 (1994). It has no bearing on real property transactions, tax obligations, or on the professional relationship between a chapter 13 trustee and the debtor, which is governed by the Bankruptcy Code.

Second, Debtors argued that, pursuant to California law, they had extinguished their obligations by tendering their offers and, thus, were entitled to an early order of discharge. To the extent Debtors attempted to usurp federal bankruptcy law, the state law upon which they relied was pre-empted, "because the ability to grant a discharge is 'one of the principal requisites'" of federal

-10-

bankruptcy law.  Sherwood Partners, Inc. v. Lycos, Inc., 394 F.3d 1198, 1203 (9th Cir.) (quoting Stellwagen v. Clum, 245 U.S. 605, 616 (1918)) (state statutes that purport to grant a bankruptcy discharge are preempted), cert. denied, ___ U.S. ___, 126 S.Ct. 397 (2005).  See also, Aerocon Eng'g, Inc. v. Silicon Valley Bank (In re World Aux. Power Co.), 303 F.3d 1120, 1128-29 (9th Cir. 2002) (state laws that conflict with a federal statutory scheme are preempted).

Debtors' discharge was governed by the Bankruptcy Code and the terms of their confirmed plan, and we review this appeal in the context of the substantive law, both pre- and post-confirmation.

Debtors' residential real property was scheduled with a value of $310,000 and reflected a lien of Select Portfolio in the amount of $215,000.  In regards to the treatment of such secured claim, the Code permits only the curing of arrearages over a reasonable time.  See § 1322(b)(5).  Otherwise, the rights of such residential secured creditor may not be modified.  See § 1322(b)(2).  In compliance with the Code, Debtors' plan proposed to cure the arrearage over time and to make the monthly loan payments of $1,700 directly to Select Portfolio.

Spatenka's lien was listed on Debtors' schedules in the amount of $160,000 on other real property valued at $470,000. Under the Code, § 1325(a)(5) requires that, unless a secured creditor accepts the plan or the collateral which secures the claim is surrendered, the plan must provide for the retention of the creditor's lien and provide for the distribution of cash payments which are not less than the allowed amount of the claim.

-11-

See § 1325(a)(5)(B)(i) and (ii).  Compliance with the payment requirement of § 1325(a)(5)(B)(ii) is mandatory.  See Barnes v. Barnes (In re Barnes), 32 F.3d 405, 407 (9th Cir. 1994).  In addition, § 1322(b)(5) provides for the curing of arrearages and maintenance of payments in a plan, and § 1322(b)(8) allows "payment" of all or part of a claim from either estate property or Debtors' property.  11 U.S.C. § 1322(b)(8).

In meeting Code requirements, Debtors proposed a plan which would cure the $4,000 arrearage through the monthly plan payments, pay $1,608.75 directly to Spatenka each month, and pay off the entire secured debt with a cash payment before 60 months.

Another condition of confirmation is that the plan must be feasible, in that "[t]he debtor will be able to make all payments under the plan . . . ."  11 U.S.C. § 1325(a)(6).  Debtors' confirmed plan nowhere provided that the required "payments" could be in a form other than what the Code and the parties intended-- cash.

The Code further requires that each month, for the term of the plan, the debtor must submit "all or such portion of future earnings or other future income . . . as is necessary for the execution of the plan."  11 U.S.C. § 1322(a)(1).  Debtors' plan was confirmable because it set forth the proper treatment of the secured creditors' claims.  Additionally, it called for cash payments of $740 each month to Trustee.  Once the plan was confirmed, it was legally binding upon Debtors and each creditor.  See § 1327(a).

In the normal course of a plan, a debtor makes all of the payments under its terms and, after completing such payments, is

-12-

entitled to a discharge. See § 1328(a). A "hardship" discharge may be granted before all payments have been made "only if":

>    (1) the debtor's failure to complete such payments is due to circumstances for which the debtor should not justly be held accountable;
>
>    2) the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 of this title on such date; and
>
>    (3) modification of the plan under section 1329 of this title is not practicable.

11 U.S.C.A. § 1328(b).

Debtors satisfied none of the statutory conditions for an early or "hardship" discharge. Instead, they unilaterally attempted to force their secured creditors, as well as Trustee, to accept something other than the cash payments promised in their plan, under which they and their creditors were bound. It is not surprising that Trustee and the affected secured creditors resisted that effort.

Post-confirmation changes to a plan are governed by § 1329. Debtors did not file a motion to modify their plan post-confirmation. Or, if they were attempting to modify their plan, they failed to comply with the requirements of § 1329.

Modification is essentially a new plan confirmation and must be consistent with the statutory requirements for confirmation. See Max Recovery, Inc. v. Than (In re Than), 215 B.R. 430, 434 (9th Cir. BAP 1997); see also § 1329(b)(1). Had Debtors attempted to modify their plan pursuant to the Code, any modifications would also be subject to the requirements of §§ 1322(a) and (b), 1323(c), and 1325(a). See § 1329(b)(1).

-13-

1    Not having a proper modified plan before it, either

2 substantively or procedurally, the bankruptcy court did not err in

3 rejecting Debtors' efforts to substitute bizarre, legally

4 ineffective pieces of paper for their promises (both pre- and

5 post-bankruptcy) to pay cash in order to satisfy legal obligations

6 which they had voluntarily incurred.

7    Based on the foregoing analysis, we conclude that Debtors'

8 offers of tender to Trustee and the secured creditors were legally

9 insufficient to effectuate a modification to the confirmed plan.

10 Moreover, Debtors did not satisfy the requirements for an early

11 discharge.   Therefore, the bankruptcy court properly denied their

12 Motion for Discharge of Debts.

13

14        **B.   Dismissal of the Bankruptcy Case was Warranted**

15

16    Under § 1307(c), on request of a party in interest or the

17 United States Trustee, and after notice and a hearing, the

18 bankruptcy court may dismiss a chapter 13 case for "cause,"

19 including "material default by the debtor with respect to a term

20 of a confirmed plan."   11 U.S.C. § 1307(c)(6).

21    Here, Trustee filed a notice of default and possible

22 dismissal of Debtors' case because they were in default in plan

23 payments.   At the May 5, 2005 hearing, Trustee informed the court

24 that Debtors were still in default.

25    Debtors did not present a plausible defense to Trustee's

26 motion to dismiss, but only advanced their labored fantasies about

27 how the Code should be construed.   We have affirmed the bankruptcy

28 court's conclusion that Debtors' so-called notes and offers of

-14-

tender were legally insufficient, because they did not comply with the Code, which was the applicable substantive law. Therefore, the bankruptcy court did not abuse its discretion in dismissing Debtors' chapter 13 case.

### C. The Orders Were Not Void Due to Lack of Due Process, Fraud or Judicial Bias

Debtors argue three grounds for asserting that the bankruptcy court's Order Denying Motion for Discharge of Debts and Order Dismissing Case were void: lack of due process, fraud, and judicial bias.

Due process guarantees notice and an opportunity to be heard where a protected property or a liberty interest is at stake. What constitutes due process and adequate notice depends on the facts and circumstances of each case. Owens-Corning Fiberglas Corp. v. Ctr. Wholesale, Inc. (In re Ctr. Wholesale, Inc.), 759 F.2d 1440, 1449 (9th Cir. 1985). In general, notice must be reasonably calculated to apprise the parties of the pendency of the action and afford interested parties a reasonable opportunity to respond. Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).

Debtors have not complained that they did not have notice of the May 5th hearing, or that they were unable to participate in a meaningful way. They appeared pro se after their attorney's motion to withdraw was granted at that same hearing, and then they requested additional time to obtain new counsel. The bankruptcy court agreed that new counsel was vital to their cause, and allowed Debtors 20 days in which to obtain new counsel and file a

-15-

motion for reconsideration or take other action, such as converting the case to chapter 7. Debtors, therefore, were not prejudiced by their attorney's withdrawal. See <u>Reyes-Melendez v. I.N.S.</u>, 342 F.3d 1001, 1006 (9th Cir. 2003) (constitutional due process claims require showing of prejudice, "which means that the outcome of the proceeding may have been affected by the alleged violation.") However, Debtors never did obtain new counsel, and have proceeded <u>pro se</u> since the May 5th hearing.

Debtors had their day in court and the full opportunity to raise all issues before the bankruptcy court, and the evidence and record do not support a violation of their due process rights.

Next, Debtors contend that Spatenka, Trustee and the bankruptcy court engaged in fraud, including fraudulent nondisclosure. Debtors' examples of fraud are merely their belief that the court's opinions or rulings, which were simply contrary to their views and arguments, were wrong. That is not enough.

Debtors further allege that Trustee and the court worked in collusion to put the real property into foreclosure and that they were not provided with a report of the distribution of proceeds. There is no evidence of such collusion in the transcript of proceedings of May 5, 2005, nor in any other part of the record. Furthermore, any allegations that the foreclosure sale, which was scheduled to occur after the bankruptcy case was dismissed, was improperly conducted is well beyond the scope of this appeal and the record presented for review.

Finally, Debtors contend that the bankruptcy judge was biased and violated the judicial code of conduct. Their sole basis for this assertion is based on the court's rejection of their

-16-

arguments. Opinions formed by the bankruptcy judge, on the basis of either the facts introduced at trial or the absence of such facts, do not constitute bias or impartiality unless the judge has displayed a "deep-seated favoritism or antagonism that would make fair judgment impossible." Liteky v. United States, 510 U.S. 540, 555 (1994).

Our review of the May 5th transcript does not reveal any favoritism or antagonism on the part of the bankruptcy judge. Indeed, the opposite is true. The bankruptcy judge listened without interruption to the arguments and considered the facts and law before rendering his rulings. He then stayed the ruling for 20 days in order to give Debtors a fair opportunity to obtain new counsel or to file any necessary motions, including a motion for reconsideration of the court's rulings.

Therefore, we find no basis for Debtors' assertion that either the Order Denying Motion for Discharge of Debts or the Order Dismissing Case was void for lack of due process, or that they were based upon fraud or judicial bias.

## CONCLUSION

The evidence and law supports the bankruptcy court's rulings. Debtors were provided due process, but they did not file a proper motion to modify their confirmed plan. Their unilateral efforts to impose new conditions on Trustee and their secured creditors, based upon erroneous and improper conclusions as to what law should guide the course of the bankruptcy case, did not alter their obligation to comply with the terms of their confirmed plan.

-17-

1  Since they defaulted, the court did not err in dismissing their

2  case.    The court's rulings against Debtors' position were not

3  indicative of fraud or judicial bias.    Therefore, both orders are

4  **AFFIRMED**.

-18-

U.S. Bankruptcy Appellate Panel
of the Ninth Circuit
125 South Grand Avenue, Pasadena, California 91105
Appeals from Central California   (626) 229-7220
Appeals from all other Districts  (626) 229-7225

NOTICE OF ENTRY OF JUDGMENT

BAP No. NC-05-1205-MaSZ

RE:   MIZRAIM MOHAMMED EL and PATRESE M. EL

A separate Judgment was entered in this case on _____12/23/05_____.

BILL OF COSTS:

Bankruptcy Rule 8014 provides that costs on appeal shall be taxed by the
Clerk of the Bankruptcy Court.  Cost bills should be filed with the Clerk
of the Bankruptcy Court from which the appeal was taken.
9th Cir. BAP Rule 8014-1

ISSUANCE OF THE MANDATE:

The mandate, a certified copy of the judgment sent to the Clerk of
the Bankruptcy Court from which the appeal was taken, will be issued
7 days after the expiration of the time for filing a petition for
rehearing unless such a petition is filed or the time is shortened or
enlarged by order.  See Federal Rule of Appellate Procedure 41.

APPEAL TO COURT OF APPEALS:

An appeal to the Ninth Circuit Court of Appeals is initiated by
filing a notice of appeal with the Clerk of this Panel.  The Notice
of Appeal should be accompanied by payment of the $255 filing fee
(effective November 1, 2003) and a copy of the order or decision on
appeal. Checks may be made payable to the U.S. Court of Appeals for
the Ninth Circuit.  See Federal Rules of Appellate Procedure 6 and the
corresponding Rules of the United States Court of Appeals for the Ninth
Circuit for specific time requirements.

CERTIFICATE OF MAILING
-------------------------------------
        The undersigned, deputy clerk of the U.S. Bankruptcy
Appellate Panel of the Ninth Circuit, hereby certifies that a copy
of the document on which this certificate appears was mailed this date
to all parties of record to this appeal.

                         By: Edwina Clay

                         Deputy Clerk: December 23, 2005